2002 UT 78

**ENERCO, INC., Plaintiff and Appellant,**

v.

**SOS STAFFING SERVICES, INC., Freeport Center Associates, Atlas Steel, Inc., L. Bloom & Son Ogden, Wasatch Metal, Inc., John Does I–X and Doe corporations I–X, Defendants and Appellants.**

No. 20010050.

Supreme Court of Utah.

Aug. 9, 2002.

Michael L. Schwab, Lloyd A. Hardcastle, Farmington, for plaintiff.

John R. Lund, Julianne P. Blanch, Salt Lake City, for defendants.

DURHAM, Chief Justice.

¶ 1 This action was brought by Enerco, Inc. (Enerco), against Freeport Center Associates (Freeport) to recover damages for property stolen from Enerco while it was leasing building space from Freeport. On a motion for summary judgment, the trial court held Freeport not liable for the losses. We affirm.

## BACKGROUND

¶ 2 Enerco is a Delaware corporation in the business of buying large surplus lots of equipment and merchandise from the United States government and reselling the materials throughout the world. Freeport is the owner of a 735 acre manufacturing and distribution center consisting of 92 buildings leased to private and public entities.

¶ 3 On July 9, 1993, Enerco and Freeport entered into a written lease agreement whereby Freeport leased space in one of its buildings to Enerco for the purpose of "[s]torage and distribution of [Enerco's] products and materials." The lease agreement was for a six-month period beginning in August 1993 and ending in January 1994, with a holdover clause providing for a month-to-month tenancy thereafter.

¶ 4 In late 1995, Enerco terminated all of its temporary employees so that no one would have access to the premises during an extended overseas trip of the directing manager. One of Enerco's former temporary employees and others began stealing large quantities of Enerco's property, using trucks and flatbed trailers and entering through the back entrance of the warehouse. Enerco filed this action against Freeport to recover its losses from the theft.

¶ 5 On Freeport's motion for summary judgment, the trial court ruled that (1) Freeport did not breach its lease agreement with Enerco, (2) Freeport had no duty as a landlord to protect the personal property of Enerco from third persons, and (3) Freeport was not a warehouseman and therefore not subject to liability for Enerco's property losses under Utah Code Section 70A–7–102. This appeal followed.

## STANDARD OF REVIEW

¶ 6 Whether a contract is ambiguous is a question of law. See Dixon v. Pro Image Inc., 1999 UT 89, ¶ 14, 987 P.2d 48 (Utah 1999); see also Fitzgerald v. Corbett, 793 P.2d 356, 358 (Utah 1990). In considering a grant of summary judgment, "we review the court's legal decision for correctness." Booth v. Attorneys' Title Guar. Fund, Inc., 2001 UT 13, ¶ 28, 20 P.3d 319 (citations omitted). In deciding whether the trial court correctly granted summary judgment to Freeport on Enerco's negligence and breach of lease claims, we grant no deference to the trial court and "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Keith Jorgensen's, Inc. v. Ogden City Mall Co., 2001 UT App 128, ¶ 10, 26 P.3d 872 (citations omitted).

## ANALYSIS

### I. BREACH OF CONTRACT

¶ 7 Enerco makes several arguments that Freeport breached the lease agreement, claiming: (1) Freeport breached the lease agreement by failing to repair damage to the entrance of the leased property; (2) Freeport breached its duty to provide insurance and security for Enerco's personal property; and (3) the written lease agreement had expired at the time of the theft, so its terms do not limit the duties of the parties.

¶ 8 Enerco claims that Freeport is responsible for the large quantity of personal property that was stolen because of Freeport's failure to promptly repair doors damaged during the previous robberies. Enerco bases this argument on language in the lease agreement requiring Freeport to repair damage to the premises. However, the lease

agreement also requires written notice before Freeport becomes responsible for repairs. There is no evidence that Enerco gave written notice of any damage to Freeport. Therefore, Freeport is not in breach of the repair provision of the lease.

¶ 9 Enerco next argues that the lease agreement is ambiguous and therefore we should consider extrinsic evidence of oral representations made by Freeport about security. Enerco also argues that the lease agreement is ambiguous about whether Freeport was required to provide insurance for Enerco's personal property. We disagree.

¶ 10 "A contract provision is ambiguous if it is capable of more than one reasonable interpretation...." *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991). "If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Id.* (citations omitted).

¶ 11 In the present case, the lease contract is not capable of more than one reasonable interpretation. The language of the lease specifically states that "Tenant and Landlord hereby mutually release and waive their entire right of recovery against the other party for any and all loss or damage to ... all personal property of Tenant[.]" The lease agreement has an indemnification clause whereby Enerco agrees to hold Freeport harmless for "any theft or damage to or destruction of goods, wares, merchandise and all other property of Tenant[.]" In addition to these two provisions, the lease agreement has an integration clause acknowledging that the lease "contains all the agreements made and entered into between the Tenant and the Landlord."

¶ 12 The foregoing language is not ambiguous and therefore the intentions of the parties must be determined from the language of the agreement. *See Winegar*, 813 P.2d at 108. Since the language of the lease agreement releases Freeport from responsibility for damage to the personal property of Enerco, makes no representations about security,

and specifically disallows any agreements outside of the provisions of the lease, extrinsic evidence to the contrary is not permissible.

¶ 13 Enerco bases its final argument regarding breach of contract on the fact that the six-month term of the original lease agreement had expired when the robberies took place. Enerco argues that because the lease term had expired, the provisions of the lease are void, thus allowing the parties to form a new oral lease. We disagree. The lease contains a holdover clause whereby the lease becomes a month-to-month tenancy after the expiration of the six-month period "on the same terms and conditions as provided" in the lease contract. The terms of the original lease were therefore in effect at the time Enerco's personal property was stolen.

## II. LANDLORD'S DUTIES

¶ 14 Enerco makes several arguments that Freeport had duties as a landlord that extend beyond the language of the lease agreement. Enerco argues that (1) Freeport had an expanded common law duty to protect the personal property of Enerco, (2) Enerco, under Utah law, is considered a co-insured of Freeport, and (3) Freeport had the same commercial duties as an innkeeper.

¶ 15 Enerco argues that as a landlord, Freeport had an expanded common law duty to "exercise reasonable care toward [its] tenants in all circumstances." *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). While it is true that *Williams* and other cases relied on by Enerco do expand the common law duty of landlords, that duty extends only in the context of "injuries caused by any defects or dangerous conditions[.]" *Id.* at n. 1 (citation omitted). *Williams* stands for the proposition that landlords have some duty to protect tenants from physical injury resulting from dangers on the leased premises, not a duty to protect the personal property of tenants from third parties.[1] *See id.* at 727–28. As the California Court of Appeals has pointed out, "it is the tenant that is in the best position to take steps to protect the safety of

---

1. The duty of an implied warranty of habitability applies to commercial as well as residential leas-

es. *See Richard Barton Enters., Inc. v. Tsern*, 928 P.2d 368, 376 (Utah 1996).

its own property[.]" *Royal Neckwear Co., Inc. v. Century City, Inc.,* 205 Cal.App.3d 1146, 252 Cal.Rptr. 810, 814 (1988).

■ ¶ 16 Enerco also argues that Freeport had a duty to provide insurance for Enerco's personal property. Enerco relies on language in *GNS Partnership v. Fullmer,* which states that "the landlord's insurance is presumed to be held for the tenant's benefit as a coinsured in the absence of an express agreement to the contrary." 873 P.2d 1157, 1161 (Utah Ct.App.1994). However, this language does not apply to Enerco's situation. In *GNS Partnership* we held that landlords and tenants are co-insureds for subrogation purposes in the context of insuring the landlord's building, not the tenant's personal property. *See id.* at 1160–61. Freeport owes no duty to insure Enerco's personal property under *GNS Partnership.*

■ ¶ 17 Enerco also argues that Freeport had the same duties as does an innkeeper to protect the personal property of its guests. We reject that notion. Under the common law, innkeepers had a relatively strict duty to protect the personal property of travelers for public policy reasons.[2] *See* 40A Am.Jur.2d *Hotels, Motels, and Restaurants* § 131 (1999). Travelers and strangers needed to be able to trust the honesty of innkeepers and were entitled to special treatment as guests. *See id.; Fisher v. Bonneville Hotel Co.,* 55 Utah 588, 188 P. 856, 859 (1920). This unusually strict duty to guests imposed by the common law on innkeepers has had very narrow application. *See, e.g., Fisher,* 188 P. at 858–59 (drawing distinction between guests and boarders).

■ ¶ 18 Enerco, as a tenant, is not a guest of Freeport. "A lease 'conveys an interest in land and transfers possession [of a space].'" *Keller v. Southwood N. Med. Pavilion, Inc.,* 959 P.2d 102, 107 (Utah 1998) (internal quotation omitted) (citing 49 Am. Jur.2d *Landlord and Tenant* § 21 (1995)). A tenant, being in exclusive possession of a property, cannot be fairly considered a guest of the property or the landlord. The public policy justifying the common law's heightened duty of innkeepers to safeguard travelers' personal belongings has no application to a landlord-tenant relationship.

## III. WAREHOUSEMAN

■ ¶ 19 Enerco argues that under the Uniform Commercial Code, which Utah has adopted, *see* Utah Code Ann. §§ 70A–1 to–11 (1997 & Supp.2001), Freeport is liable for Enerco's stolen merchandise. Enerco supports its argument by claiming that the definition of a warehouseman under Utah law applies to Freeport. We disagree.

¶ 20 Utah Code Section 70A–7–102(1)(h) defines a warehouseman as "a person engaged in the business of storing goods for hire." Utah Code Ann. § 70A–7–102(1)(h) (1997). "A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances...." Utah Code Ann. § 70A–7–204(1) (1997); *see also Barlow Upholstery & Furniture Co. v. Emmel,* 533 P.2d 900, 901 (Utah 1975).

■ ¶ 21 The transaction that a warehouseman engages in is a bailment. *See* Black's Law Dictionary 1578 (7th ed.1999). Acting as a bailee, the warehouseman "acknowledges possession of goods and contracts to deliver them." Utah Code Ann. § 70A–7–102(1)(a). Therefore, the question of whether or not someone is a warehouseman depends upon whether he has accepted "the responsibility of safekeeping the property of others entrusted to him." *Barlow Upholstery & Furniture Co.,* 533 P.2d at 901.

¶ 22 The plain language of the lease agreement entered into by Freeport and Enerco did not make Freeport responsible for safekeeping Enerco's property. The agreement leases specific "premises" to Enerco for monthly payments. As mentioned above, a lease "conveys an interest in land ... [and] must convey a definite space and must transfer exclusive possession of that space to the lessee." *Keller,* 959 P.2d at 107 (citing 49 Am.Jur.2d *Landlord and Tenant* § 21 (1995)). Thus, the very nature of a lease

---

2. The common law rule making an innkeeper practically an insurer of the property of its guests has been greatly limited in Utah by statute. *See* Utah Code Ann. §§ 29–1–1 to–3 (1998).

agreement makes Enerco the sole possessor of the merchandise stored on the leased premises. *See id.* Freeport did not have possession of Enerco's property and was not in a position to safeguard it. The fact that Enerco chose to use the leased space as a warehouse does not make Freeport a warehouseman.

## CONCLUSION

¶ 23 We affirm the trial court's grant of summary judgment to Freeport. We find that (1) Freeport did not breach the lease agreement, (2) Freeport did not have a duty to protect the personal property of Enerco from third parties beyond that specified in the lease agreement, and (3) Freeport was not a warehouseman under Utah law.

¶ 24 Associated Chief Justice DURRANT, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Chief Justice DURHAM's opinion.